UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | File No. 24-CR-324 (JMB/DJF) |
| Plaintiff, | |
| v. | |
| Matthew Thomas Panetti, | ORDER ADOPTING REPORT AND RECOMMENDATION |
| Defendant. | |

---

This matter is before the Court on the Report and Recommendation (R&R) of United States Magistrate Judge Dulce J. Foster dated October 20, 2025. (Doc. No. 82.) The R&R recommends denying Defendant Matthew Thomas Panetti's Motion to Suppress Evidence Obtained as a Result of Unlawful Search (Doc. No. 62), and Panetti objected (Doc. No. 86). For the reasons discussed below, the Court overrules Panetti's Objections, adopts the R&R, and denies Panetti's Motion to Suppress Evidence.

## BACKGROUND

The factual background for this matter is set forth in the R&R and is incorporated here by reference. Because the R&R provides a detailed history, the Court only briefly summarizes it here.

Panetti's cell phone was seized as part of a money counterfeiting investigation. (Doc. No. 75 [hereinafter, "Tr."] at 19–20.) Investigator Jeffrey Nelson and Deputy Andrew Hussman of the Renville County Sheriff's Office drafted a warrant application to search Panetti's cell phone (a "Samsung cell phone, RCSO evidence 23-00588, seized from

1

[Panetti] on 10/13/2023") for evidence of counterfeiting and to analyze the phone's location data to ascertain whether Panetti, a registered sex offender, was residing at an unregistered address. (*Id.* at 16, 20; Gov't Ex. 1 at 2–4.) The warrant application provided the following description of anticipated evidence of counterfeiting that could be stored on a cell phone relating to counterfeiting and violating registration requirements:

> Your Affiant knows that individuals who intend to commit crimes such as manufacturing currency, commonly research the subject prior to committing the crime. Your Affiant knows that this research can take place on: cell phones, laptops, desktops, or any other device capable of accessing the internet. Additionally, the process to wash and reprint currency requires specific materials to accomplish it and would require research to ensure proper technique is conducted. Your Affiant knows that this research is commonly conducted a significant period of time prior, to include months.
>
> During execution of the warrant no computer was located near the printer. Your Affiant knows that newer model printers can sync to a cellular device and subsequently, images can be printed from a cellular device. Furthermore, your Affiant knows that cellular devices can possess an application to capture an image and reformat it into a PDF for printing.
>
> Your Affiant knows that location data is stored within a cellular device. Your Affiant knows that this location data can show Panetti within the locations of Hector, Fairfax, and Olivia where the currency was used. Additionally, your Affiant knows that this location data can show Panetti residing at 72110 410th St in violation of his registry requirements.

(Gov't Ex. 1 at 4.) The application requested a full forensic download of data from the phone for the three-month period of July 13, 2023, to October 13, 2023. Minnesota District Court Judge Laurence Stratton signed the warrant based on a finding of probable cause that the cell phone constitutes evidence or is used to store evidence of a crime. (*Id.* at 7-8.)

Nelson used a device to retrieve and view data on the cell phone, including the "photos, videos, website browsing history, location data related to counterfeit currency,

along with [Panetti's] Predatory Offender Registration." (Tr. at 38.) While reviewing photos and videos, Nelson observed several pictures of U.S. currency. (*Id.* at 39.) He also observed an image that appeared to be child sexual abuse material (CSAM). (*Id.* at 39–41.) This image appeared as a thumbnail alongside 20 or 30 other thumbnail images, including images of counterfeit money. (*Id.*) Nelson enlarged the image and confirmed that it was CSAM. (*Id.* at 49.) He then continued his "search with the counterfeit currency case" with the understanding that "there could be more [CSAM] images" in the phone as he continued "going through for counterfeit currency." (*Id.* at 50.) As he continued his search, Nelson saw a second thumbnail image that appeared to be CSAM. (*Id.* at 51.) He enlarged this second image and confirmed that it was CSAM. (*Id.*)

After seeing the two images of CSAM material, Nelson drafted and obtained a subsequent search warrant to search Panetti's cell phone for images and videos related to CSAM. (*Id.* at 42.) This search led to the discovery of additional CSAM on Panetti's cell phone . (*Id.*) Officers subsequently obtained additional warrants to seize and search other electronic devices at Panetti's residence, which led to the discovery of more CSAM. (*Id.*) Panetti previously challenged the constitutionality of using his non-*Mirandized* statements against him as well as the constitutionality of the seizure of his cell phone based on those statements. (Doc. No. 41.) The Court denied the motion to suppress Panetti's statements, concluding that *Miranda* did not apply to the voluntary statements that Panetti made and, in the alternative, concluding that the seizure of Panetti's cell phone was constitutional under the independent source doctrine. (Doc. No. 78.) Panetti now challenges the constitutionality of law enforcement officers' search of his cell phone for CSAM images.

3

**DISCUSSION**

The Parties first dispute whether the good-faith exception to the exclusionary rule is applicable.[1] In addition, they disagree whether—assuming the search of Panetti's cell phone was valid—Nelson observed the thumbnail images of the suspected CSAM in plain view. The Court concludes that the good-faith exception applies, and that Nelson observed the suspected CSAM in plain view.[2]

**I.    GOOD-FAITH EXCEPTION**

The R&R concluded that although the search warrant authorizing Nelson's initial review of the photos, videos, and location data relating to counterfeit currency on the phone failed to satisfy the particularity requirement of the Fourth Amendment, the good-faith exception applied. The Court concludes that Nelson's review of the photos did not violate the Fourth Amendment.

---

[1] The Government does not argue that the warrant itself includes language specifically finding probable cause that the cell phone would contain evidence of counterfeiting, registration violations, or otherwise limiting law enforcement's search of the cell phone to evidence of these crimes. (*See* Doc. No. 87.) Instead, the Government relies on the good faith exception to the exclusionary rule and argues that Nelson's actual conduct conformed to the application, which, as noted above, includes specific language regarding evidence of counterfeiting and registration violations. (*Id.* at 2–5.) Importantly, Panetti develops no explicit argument to the contrary about Nelson's actual conduct and argues only that the good faith exception does not apply in this case because the signing judge wholly abandoned his judicial role, and no reasonable law enforcement officer could believe that the warrant was valid. (*See* Doc. No. 86 at 2–5.) For these reasons, the Court limits its analysis to the question presented by the parties: whether either circumstance is present such that the good faith exception does not apply here.

[2] This Court reviews de novo any portion of an R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3); D. Minn. L.R. 72.2(b).

The good-faith exception provides that the exclusionary rule should not be applied to bar the admission of evidence obtained by officers acting in reasonable reliance on a search warrant. *United States v. Dickerman*, 954 F.3d 1060, 1065 (8th Cir. 2020) (summarizing *United States v. Leon*, 468 U.S. 897 (1984)). However, the good-faith exception cannot apply in the following four situations where an officer's reliance on a warrant would be unreasonable: (1) the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*; and (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid. *Id.*

Panetti argues that the second and fourth conditions preclude application of the good-faith exception to this case. (Doc. No. 86 at 2–3.) Under the second condition, "[a] judge abandons his judicial role when he does not serve as a neutral and detached actor, but rather as a rubber stamp for the police and an adjunct law enforcement officer." *United States v. Ortiz-Cervantes*, 868 F.3d 695, 703 (8th Cir. 2017) (citation modified). To determine whether the fourth condition is present, "it is appropriate to take into account the knowledge that an officer in the searching officer's position would have possessed." *United States v. Curry*, 911 F.2d 72, 78 (8th Cir. 1990); *see also Groh v. Ramirez*, 540 U.S. 551, 554–55 (2004) (concluding that a warrant was so facially deficient that no reasonable officer could believe it was valid because the warrant was not accompanied by any

5

particularized warrant application). Moreover, the Eighth Circuit has explained that "it is reasonable to believe that [an officer] conducted a more circumscribed search than the language of the warrant literally authorized." *United States v. Williams*, 131 F.4th 652, 659 (8th Cir. 2025). The Court concludes that neither condition is present in this case.

Initially, Panetti argues that the issuing judge abandoned his judicial role because he took only ten minutes to review the warrant. (*Id.* at 3.)[3] Contrary to Panetti's argument, however, ten minutes was sufficient time for the judge to review the warrant application in this case. The application was brief—only slightly more than four full pages in length. (*See* Gov't Ex. 1.) Furthermore, Renville is a one-judge county and the judge signing the warrant application was already familiar with the case because he had just signed warrant applications for the same case the previous evening. (Tr. at 17, 31; *see* May 16, 2025 Mot. Hr'g Gov't Exs. 1, 2.) Finally, the parties stipulated that this judge is in good standing. (Tr. at 31–32.) There is no argument that the signing judge ignored the application or failed to read it. Absent such facts, the Court concurs with the Magistrate Judge and concludes that Judge Stratton did not wholly abandon his judicial role.

Panetti also argues that the lack of particularity in this warrant rendered it so facially deficient that the drafting and executing officer could not have reasonably presumed the

---

[3] The Court is also concerned that Panetti failed to raise this argument before before the Magistrate Judge. (*See* Tr.; Doc. No. 77.) At the August Motion Hearing, Panetti even stipulated that "the officer's reliance on the signed warrant was reasonable given . . . the process of review and the particular judge." (Tr. at 32.) Nevertheless, the Court addresses the merits of the argument and concludes that the good faith exception applies in this case.

warrant to be valid.  (*Id.* at 3–5.)  This argument is not convincing.  Here, like in *Williams* and unlike the warrant in *Groh*, there is no evidence to suggest that Nelson failed to act in good faith or improperly took advantage of the lack of particularity in the warrant.  Nelson was guided by both the warrant itself and the accompanying affidavit.  (Tr. at 36–37, 53.)  Importantly, the parties do not dispute that the warrant application focused on content related to counterfeiting and Panetti's sex offender registration requirements.  (Gov't Ex. 1 at 4.)  Nor is there any disagreement that Nelson assisted Deputy Hussman with the drafting of the warrant and that he reviewed the signed warrant before searching the phone; he was therefore familiar with the parameters set by the warrant.  (Tr. at 21, 36.)  Pursuant to the terms of the warrant application, Nelson properly focused his search on evidence "related to the counterfeit currency, along with Predatory Offender Registration."  (Tr. at 41.)  Panetti does not cite to any caselaw, and this Court is not aware of any, in which a warrant permitting a full forensic download of a cell phone, for a specific and limited timeframe, was found to be so facially deficient that no reasonable officer could believe it was valid.  Given the limited time frame specified in the warrant and in light of the particularized statements in the warrant application, law enforcement officers could reasonably believe the warrant to be valid.

      The Court concludes that neither condition identified by Panetti is present in this case.  Thus, the good-faith exception applies and the Court declines to extend the exclusionary rule to the evidence obtained during the execution of the warrant in this case.

## II.    PLAIN VIEW

      Panetti next argues that Nelson violated the Fourth Amendment because he did not

observe the suspected CSAM in plain view. Again, the Court disagrees and concludes that Nelson observed both images in plain view.

Law enforcement may seize evidence that is in plain view without a warrant when the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, the object's incriminating character is immediately apparent, and the officer has a lawful right of access to the object itself. *Horton v. California*, 496 U.S. 128, 136–37 (1990).

Panetti makes no argument that Nelson did not observe the first thumbnail image in plain view, instead Panetti challenges only the observation of the second thumbnail image. Panetti relies primarily on *United States v. Carey*, 172 F.3d, 1268, 1273 (10th Cir. 1999), in which the Tenth Circuit concluded that the executing officer of a search warrant did not observe CSAM in plain view because the images were stored in closed files that the officer continued to open after discovering the first CSAM image. [4] *Id.* at 1271 ("[U]ntil [the officer] opened each file, he really did not know its contents.").) The facts of this case, however, are quite different. Unlike the executing officer in *Carey* who did not have thumbnail images to view and who proceeded to open closed files in an attempt to search for additional CSAM, Nelson did not open any closed files and knew immediately upon viewing the thumbnail image that it was likely CSAM. (Tr. at 51 ("[J]ust seeing that thumbnail, it stood out immediately to me [as] child porn.").) Although Nelson enlarged

---

[4] The other cases that Panetti cites all discuss *Carey* and fail to account for this distinction. *See United States v. Mann*, 592 F.3d 779 (7th Cir. 2010); *United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009); *United States v. Walser*, 275 F.3d 981 (10th Cir. 2001).

the image to confirm what it was, it was not necessary for him to open any files to access the CSAM, which appeared alongside images of currency. As the R&R notes, the *Carey* concurrence specifically considers the kind of search that Nelson conducted and concludes that such a search would not have violated the Fourth Amendment. 172 F.3d at 1277 ("In contrast, if the record showed that Detective Lewis had merely continued his search for drug-related evidence and, in doing so, continued to come across evidence of child pornography, I think a different result would be required."). Given the differences between Nelson's actions and those of the officer in *Carey*, the Court concurs with the Magistrate Judge and concludes that Nelson observed the suspected CSAM in plain view.

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant Matthew Thomas Panetti's Objections to the Report and Recommendation (Doc. No. 86) are OVERRULED.

2. The Report and Recommendation (Doc. No. 82) is ADOPTED.

3. Defendant Matthew Thomas Panetti's Motion to Suppress Evidence (Doc. No. 62) is DENIED.

Dated: December 19, 2025                    /s/ *Jeffrey M. Bryan*
                                            Judge Jeffrey M. Bryan
                                            United States District Court